[ PHILADELPHIA, FEBRUARY 29TH, 1840. ]

RONEY <i>against</i> STILTZ.

CASE STATED.

A will made since the act of the 8th of April, 1833, began thus, " I do make this my last will and testament of and concerning the real and personal estate whereof I am in any wise seized or otherwise possessed, either in possession or reversion, &c. which I have any power to dispose of, as follows," &c. After sundry specific and pecuniary legacies, the testator devised the whole of her residuary estate upon certain trusts, and then concluded: " In order that the foregoing my last will and testament may be carried fully into effect, I authorise and direct my executors hereinafter named, to sell and dispose of such parts of my real and personal estate (as has not been hereinbefore disposed of,) and good and sufficient titles in law to make to the purchasers for the same." *Held*, that the executors had power to sell certain real estate acquired by the testator after the date of her will and of which she died seized.

An action was brought in this Court by John Roney, executor of the last will and testament of Barbara Odenheimer, deceased, against Michael Stiltz, and a case stated for the opinion of the Court as follows:

(Roney *v.* Stiltz.)

" Mrs. Barbara Odenheimer on the 22d of July, 1835, made her last will and testament, which was subsequently, to wit, on the 16th of December, 1837, (she having in the meantime died,) duly proved, when letters testamentary were granted to the plaintiff, one of the executors, the other, (two having been appointed,) renouncing the executorship. The parts material of the will are in these words, 'I &c. do make this my last will and testament of and concerning the real and personal estate, whereof I am in any wise seized or otherwise possessed, either in possession or reversion, or any person or persons in trust for me, which I have any power to dispose of as follows :'

The testator, after some specific and pecuniary legacies, devised the whole of her residuary estate upon certain different trusts, and then concludes. 'In order that the foregoing, my last will and testament, may be carried fully into effect, I authorize and direct my executors hereinafter named, to sell and dispose of such parts of my real and personal estate (as has not been hereinbefore disposed of,) and good and sufficient titles in law to make the purchaser for the same.'

For the purpose of carrying the object of the will fully into effect, the plaintiff, the acting executor as before said, exposed to public sale the following item, among others, of the testator's real estate ; and the defendant purchased it for the price of two thousand five hundred dollars—a three-story dwelling-house or lot of ground, No. 486, on the west side of Delaware Second street, north of Poplar lane, in the Northern Liberties, seventeen feet front by about sixty-eight in depth; subject to the payment of one pound ground-rent, Pennsylvania currency, payable to John Brown, his heirs and assigns forever.

The testator did not own the above described property on the 22d of July, 1835, the date of her will. It was acquired subsequently, and between the making of her will and her death.

The purchaser, the defendant in this case, declines paying his purchase-money, on the ground that the plaintiff has not power under the terms of Mrs. Odenheimer's will to make him a perfect title for the property ; and on this question the opinion of the Court is asked.

No other objection is taken to this title.

If the Court be of opinion that the plaintiff under the terms of the said will, can make a perfect title for the real estate in question, then judgment for five hundred dollars to be entered for the plaintiff to be released upon the defendant's acceptance of a deed for the property, from the plaintiff; but if the Court be of a contrary

(Roney v. Stiltz.)

opinion, then judgment to be entered in favour of the defendant. Costs to follow the judgment."

Mr. *Binney, Jr.* for the plaintiff.

1. The power of sale is co-extensive with the devise. By the act of 8th April, 1833, § 10, (*P. L.* 1832-33, p. 249,) " real estate acquired by a testator after making his will, shall pass by a general devise, unless a contrary intent be manifest on the face of the will." Manifest, means, not doubtful, plain, that which is showed clearly. Ambiguity of expression, silence, absence of intention, is not enough. In such case the estate will pass by virtue of the act of assembly. There is not on the face of this will, a clear, indubitable intent not to pass subsequently acquired real estate, and nothing short of such unqestionable negative intent, is, under the act of assembly, sufficient. There may be a difference of opinion as to the wisdom of this provision of the act, but the language being clear, the Court will not speculate upon the policy of the legislation.

2. The testator blends her real and personal estate. She makes no distinction between the two. She intended to make none; and as after-acquired personalty passes, so will after-acquired realty.

3. She devises all the real estate, which she had any " power to dispose of." She had " power to dispose of" this after-acquired realty. The act of the 8th of April, 1833, gave her this " power." It was then lately passed. The occasion of the act and the passage of the act were matters of more than usual notoriety; and it is probable that the testator had reference to this very " power to dispose of" after-acquired real estate which the act gave.

4. The power of sale, extends in the words of the testator to all her real estate, without the use of any *verba de presenti*, because she authorises her executors to sell " such parts of her real and personal estate as has not been before disposed of," and there is no specific devise of any real estate prior to the residuary devises.

The case is without precedent. *Busby* v. *Busby,* (1 *Dall.* 226, ad *fin.*) *Turbett* v. *Turbett,* (3 *Yeates,* 191.) *Potter* v. *Potter* (1 *Vesey,* 437,) bear indirectly upon it, though these cases refer to the quantity of estate.

Mr. *J. W. Wallace,* contra.

The plaintiff's argument is strong, but the law is unsettled and the title offered cannot be pronounced with certainty, good. The act was passed to remedy *Girard* v. *Philadelphia, &c.* (4 *Rawle,* 323,) which declared, that by no language, however strong, could after-acquired realty be passed. The remedy is but commensurate with the mischief. The legislature did not mean that expressions applied to present owned estates, shall reach round every thing which a testator during a long life may acquire. It is doubtful if the plaintiff's construction will effectuate intents, or what would have been intents had the testator's mind acted on the subject-mat-

ter. It will be seen that shocking effects will be produced, in some cases, by such a construction. A testament is defined, *testatio mentis ;* yet the strength of the plaintiff's argument is in the *absence* of intent.

2. The language is, what "I *am* seized of," and the expression " that I have any power to dispose of," is applied to that expression only.

3. The act does not require negative words, and negative intent may be manifested by affirmative words pregnant with exclusion. It is so here. The testator, by words at once general and precise, devises all she owned at the date of her will, and she makes no devises as to what she might acquire. Is not the disposition of the first, pregnant with non-disposition of the second? How can it be argued that expressions applied only to the first, include the second also. In *Gibbons* v. *Ogden*, (10 *Wheaton*, 503,) the Court argued that it was not necessary to the regulation of commerce under the Constitution, that Congress should have acted in the matter, or have expressed an intent not to act: that regulation might consist in absolute non-action : and that not doing anything, Congress showed its intent to do nothing. The principle is the same under another form. A will is a specification of positive intents, not of exclusions of negative ones. All I *am* seized of, *ex propriâ vigore*, excludes what I *may* hereafter become seized of. In an instrument of specification, not of exclusion, silence becomes equivalent to negative expression.

4. The intent is manifest on the face of the will. It can be manifested no where else, for you cannot go *dehors* the will. Negative words, could hardly be more striking, than is the absolute silence as to after-acquired realty, contrasted with the unequivocal and precise language as to that owned at the date of the will.

The opinion of the Court was delivered by

GIBSON, C. J.—The defect in the ingenious argument of the counsel for the defendant is, that it rests on the very principle which the statute was enacted to abolish. We must forget that by the interpretation put on the British statute of wills, the words of a devisor were referable to the state of his real property at the date of the will; and we must cease to expound his meaning by his capacity to convey at that time. We must make him speak at the time of his death ; and by that application of the words " of and concerning the real estate whereof I am in anywise seized," and, " which I have any power to dispose of," they are made to have regard to property had when, in contemplation of law, they were predicated. Thus, there is no discrepance between their imputed meaning and their legal effect, though there is a substantial difference betwixt the testatrix's actual and her technical intent. She did not mean to dispose of property subsequently to be acquired ; for it probably never

(Roney *v*. Stiltz.)

entered into her heart to conceive that she would acquire any. But the actual intent at the act of disposition, or at any time afterwards, is not the criterion, where it is to be collected from any expression of it but the one presently to be noticed. Human sagacity would be incompetent to provide for it by anticipation. The legislature did not mean to give effect to it; but to make a new rule of disposition for after-purchased land, by imputing a particular intent wherever the devisor did not disclaim it; and it is notorious that there is not in one such case picked out of ten thousand, any intention on the subject. The statute determines beforehand what the devisor would have done had the conjuncture subsequently presented by the state of his property, been foreseen by him; and in that aspect it could not have been viewed as more than an approximation to the truth. Discarding the actual intent, therefore, as immaterial, where the statutory intent is not to be discarded in obedience to the devisor's positive direction, we are to give effect to the natural import of the words. "Real estate," says the statute, "acquired by a testator after making his will, shall pass by a general devise, unless a contrary intention be manifest on the face of the will." Why did it not pass before? Simply because, like any other conveyance, a will was referred to the time it was made, and the words of a general devise therefore did not operate upon what was then without existence. To avoid that consequence, it was necessary to bring down its operation to the time of the death; and in order to carry out the principle, it is our business to refer the concoction of it to that period, by giving to the devisor's words, the same effect as if they had then, for the first time, been committed to paper. By this statutory metachronism, the words 'estate whereof I am seized' and 'which I have any power to dispose of,' are made to embrace all that the testatrix had at her death; and, except as regards the parts of it specifically disposed of by herself, the power to sell is commensurate with it. Now the statutory implication is not to be repelled by an apparent want of positive intent that the estate shall pass; but only by a positive direction that it shall not. When such a direction is given, it will be found to be sufficiently explicit. It is only where the subject did not occur to the devisor, that a doubt will be found resting on general expressions applicable only to particular property; and it is not perhaps too much to say that where the statute is not directly excluded, it must dispose of the difficulty. There is no such exclusion in this instance; and the executor's power to sell the property, for the price of which the action is brought, is incontestible.

                                        Judgment for plaintiff.