## Troutman's Estate.

*Wills—Construction—Context—General language.*

1. In a will, as in other written instruments, each clause must be construed in connection with its context, and ordinarily cannot be given a more extended meaning than that connection requires, merely because the language used is general.

*Practice, O. C.—Bill of review—Error in adjudication—Acts of October 13, 1840, P. L. 1841, p. 1, and June 7, 1917, P. L. 447.*

2. Questions not raised in the pleadings on a petition of review should not be considered.

3. Section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, 514, relating to petitions of review, is an advance on section 1 of the Act of October 13, 1840 (P. L. 1841, page 1), treating of the same subject, in that the former requires a review to be granted if error is made in the adjudication.

4. Where an error appears in an adjudication, and the balance found due has not been actually paid and discharged, a rehearing is a matter of right, unless, at the audit, the question at issue was raised, contested and decided adversely to petitioner.

5. The orphans' court has inherent power to and should grant a review, aside from the provisions of either act, where justice and equity require it and no one will suffer by reason thereof.

Argued March 24, 1921. Appeal, No. 399, Jan. T., 1921, by D. C. Wharton Smith, from decree of O. C. Phila. Co., April T., 1902, No. 157, dismissing petition for bill of review, in estate of George M. Troutman, de-

ceased.  Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Reversed.

Petition for bill of review.

The opinion of the Supreme Court states the facts.

The court, in an opinion by HENDERSON, J., dismissed the petition.  D. C. Wharton Smith, petitioner, appealed.

*Error assigned* was decree, quoting it.

*James Collins Jones* and *Stuart S. Janney,* with them *Owen J. Roberts,* for appellant.—Petitioner has a reasonable excuse for not having had the proper interpretation of the will of their grandfather adjudicated according to the ordinary methods of procedure.

Assuming an error to have been committed by the learned auditing judge, the orphans' court had the jurisdiction to relieve the petitioners independently of the Fiduciaries Act of 1917, and it was an error not to exercise it: Brigg's App., 5 Watts 91; George's App., 12 Pa. 260; McNeel's Est., 68 Pa. 412; Young's App., 99 Pa. 74; Milne's App., 99 Pa. 483; Johnson's App., 114 Pa. 132; Nimick's Est., 179 Pa. 591; Sloan's Est., 254 Pa. 346.

Assuming the existence of an error apparent on the face of the record it was the statutory duty of the orphans' court to grant the review prayed for and its refusal so to do constitutes error: Kinter's App., 62 Pa. 318; Bishop's Est., 10 Pa. 469; Johnson's App., 114 Pa. 132; Gillen's App., 8 W. N. C. 499; Ehrhart's Est., 31 Pa. Superior Ct. 120; Bailey's Est., 208 Pa. 594.

The effect of the application of the general chancery principles governing bills of review to petitions of review filed under the Act of 1840, or, its successor, the Act of 1917, is to leave the review for errors of law apparent on the face of the decree a matter of right: Riddle's Est., 19 Pa. 431; Green's App., 59 Pa. 235; Barr's Est, 43

Pa. Superior Ct. 540; Milligan's App., 82 Pa. 389; Le Moyne's App., 104 Pa. 321; Bailey's Est., 208 Pa. 594.

*Maurice Bower Saul*, of *Saul, Ewing, Remick & Saul*, for appellee, the Land Title & Trust Co., trustee, cited: Priestley's App., 127 Pa. 420; Sherwood's Est., 206 Pa. 465; Michener's Est., 225 Pa. 66; Cramp's App., 2 W. N. C. 391; Russell's App., 34 Pa. 258.

OPINION BY MR. JUSTICE SIMPSON, April 18, 1921:

The question to be decided on this appeal, depends upon the proper construction of the 12th and 13th articles of testator's will, by the former of which he gave a portion of his estate, and by the latter the residue thereof, upon certain trusts hereinafter specifically set forth. Separate accounts were filed of each fund; accountant, in its petitions for distribution, asked the court to declare that each trust continued as to all the parties then living; without discussing the matter in his adjudication, the auditing judge so held; no exceptions were filed to this ruling, and the adjudication was, therefore, confirmed absolutely, on December 19, 1917. On April 1, 1920, within the five years prescribed by section 48 of the Fiduciaries Act of 1917, P. L. 447, 514, a petition of review was filed, petitioners alleging that, in the adjudication, the will was mistakenly construed, that its proper interpretation would give them their share of the estate absolutely, and that, for reasons specified, they did not appear at the audit and then make claim for it. Some of the respondents, in their answers, admitted the facts set forth in the petition, and consented to the prayer thereof; the others, including accountant, averred the will was properly construed, and for this reason only alleged the petition should be dismissed. Subsequently, the facts averred therein were expressly admitted; the case was heard upon the pleadings; the court below decreed the petition should be dismissed; and this appeal was then taken by D. C. Wharton Smith, on behalf of him-

self and his brothers and sister, the petitioners for the review. The petition, though quoting both articles of the will, speaks of but one adjudication which it seeks to have reviewed, whereas there were two; but the court below treated it as covering both adjudications, the appeal was argued in this court as if it did, and we will consider it accordingly.

The question to be decided is: Have appellant and his brothers and sister an absolute or only a life estate under the above-mentioned articles of the will? In determining this, it is of vital importance that the necrology and survivorship of the parties should be made clear, and hence it is set forth in tabulated form:

1901, March 5.  Testator, Geo. M. Troutman died leaving to survive him, inter alia,
>    (1)  His widow, Marie E. Troutman,
>    (2)  His daughter, Virginia T. Smith,
>    (3)  Her son, C. Wharton Smith,
>    (4)  Her grandchildren, petitioners in the bill of review, and one of whom, D. C. Wharton Smith, is appellant,

1909, Feb. 12.  The widow died, leaving to survive her the persons named in clauses (2), (3) and (4) above.

1913, Aug. 24.  The daughter, Virginia, died, leaving to survive her the persons named in clauses (3) and (4) above.

1917, May 18.  The grandson, C. Wharton Smith, died leaving to survive him the persons named in clause (4) above.

Taking up the 12th article of the will, we find that, by the 1st paragraph thereof, accountant is given the sum of $210,000 (increased by the 7th codicil to $250,000) upon spendthrift and separate use trusts, the income thereof to be paid in equal shares to all of testator's daughters who should survive him, and the issue of those who predeceased him, during their respective nat-

ural lives. As his daughter, Virginia, who was appellant's grandmother, did survive him, she took a life estate under this paragraph.

By the 2d paragraph it is provided: "And in case of the decease after me of any of my daughter's leaving lawful issue surviving, then in trust to divide that part and share of the said trust estate from which said daughter so dying was in her lifetime entitled to receive the income into as many equal parts and shares as such daughter shall leave issue her surviving—grandchildren and remoter descendants of such daughter taking by representation and not per capita—and the shares so happening to any issue of such daughter born before my decease to hold in trust for the benefit of such issue for and during the term of their respective natural lives *upon the same trusts in all respects as hereinbefore directed with respect to my said daughters' shares of the income of my trust estate,* and the shares happening to any issue of such daughter born after my decease to hold in trust for the maintenance education and support of such issue until they respectively arrive at the age of twenty-one years *and so in every such case whenever and as often as the same may happen."*

Under this paragraph, C. Wharton Smith, who was the son of Virginia and the father of appellant, took a life estate, he having been born in testator's lifetime. Appellee's contention regarding this paragraph is built entirely on the words italicized therein; but it is evident the clause "upon the same trusts in all respects as hereinbefore directed with respect to my said daughters' shares of the income of my trust estate" does not refer, as appellee claims, to the interests of subsequent descendants, who are provided for in later paragraphs of this article, but only to the immediate surviving issue of the daughters; and the "same trusts" are the spendthrift and separate use trusts "directed with respect to my said daughters' shares of the income of my trust estate." So also the words "and so in every such case

whenever and as often as the same may happen," necessarily refer to the immediately preceding clause, so as to provide for the retention of the shares of the minor issue of testator's daughters, born after his decease, until such issue successively reach majority; and not, as appellee argues, to issue in an indefinite line of descent, whether they are issue of the daughters or of their descendants. These clauses cannot be thus wrested from their context: Verba generalia restringuntur ad habilitatem rei vel personam.

The 3d and 4th paragraphs of this article refer only to the possible cases (a) of the death of one of testator's daughters without issue; (b) where issue of testator's daughters, born before his decease, die leaving no issue, and (c) where issue of his daughters born after his decease die under twenty-one years of age leaving no issue; and hence, admittedly, have no applicability here, since Virginia left issue, viz, C. Wharton Smith, who was born during testator's life, and he also left issue, viz, appellant and his brothers and sister, who are all of full age and were petitioners in this case.

The 5th paragraph provides: "And upon the termination of any of the trusts hereinbefore limited for life or lives or minority then in trust to assign and pay the principal of the share held in trust unto the lawful issue of the person by whose decease such trust terminated for such estates and in such parts, shares and proportions as such issue would have been entitled to have received the same in by law had such person so dying been possessed of the same absolutely, or if such trust terminated with minority then unto such person absolutely the ceasing of whose minority shall have terminated the trust." This includes appellant and his brothers and sister, for one of "the trusts hereinbefore limited for life," was for the life of C. Wharton Smith, and on his decease the foregoing clause made it the duty of accountant to then "assign and pay the principal of the share [thus] held in trust unto the lawful issue of the person by whose de-

cease such trust terminated," that is, to appellant and his brothers and sister, as the lawful issue of C. Wharton Smith. It necessarily follows that the court below erred in deciding the trust continued as to this share.

By the 1st paragraph of the 13th article of the will accountant is given the residue of testator's estate upon an active trust for testator's widow for life; and by the 2d paragraph thereof it is provided: "And from and immediately after the decease of my said wife then in trust to divide the said rest, residue and remainder of my estate into as many equal parts and shares as there shall be children of mine then living and lawful issue of deceased children, such issue taking such share only as their parent would have taken if then living." The first part of this includes Virginia's share, since she survived both testator and his widow.

The 3d paragraph of this article provides that the gift to the daughters shall be upon spendthrift and separate use trusts, and then proceeds: "And the shares so happening to my said children from and immediately after their respective deaths to hold in trust for all their children then living and the lawful issue of such of them as may then be deceased their heirs executors administrators and assigns forever in equal parts and shares, so nevertheless that such issue take and receive such part and share only as his her or their deceased parent would have taken and received if then living, for the purposes hereinafter set forth, that is to say, as to the shares of the issue born before my decease of any of my children to hold the same in trust for such issue during their respective natural lives *upon the same trusts as hereinbefore set forth with respect to the shares of my children* during their lives and after the decease of such issue respectively then in trust to grant convey assign and pay the said shares respectively unto all their respective lawful issue in equal parts and shares absolutely and in fee such issue taking by representation and not per capita. And as to the shares of the issue born after

my decease of any of my children to grant convey assign and pay the same unto such issue their heirs executors administrators and assigns forever."

Under this paragraph, on Virginia's death, her son, C. Wharton Smith, appellant's father, took a life estate, he having been born in testator's lifetime; and, upon his decease, accountant was required thereby "to grant, convey, assign, and pay the said share......unto all [his] ......lawful issue in equal parts and shares absolutely and in fee," that is, to appellant and his brothers and sister, as lawful issue of C. Wharton Smith. Appellee makes the same argument as to the words italicized above, as it does regarding the same language in the twelfth article, and this fails for the same reason we gave there. The conclusion stated convicts the court below of error in not awarding this share also to appellant and his brothers and sister absolutely, unless the latter paragraphs of this article affect the matter; it will now be shown they do not.

The 4th paragraph thereof provides as follows: "And as to the shares happening in the division of my residuary estate *after the decease of my wife* unto grandchildren or remoter descendants of mine to hold in trust for the following purposes that is to say the shares happening to grandchildren or remoter descendants born before my decease to hold upon the same trusts above set forth with respect to the shares of the issue born before my decease of any of my children taking in the division aforesaid and the shares happening to grandchildren or remoter descendants born after my decease to hold upon the same trusts above set forth with respect to the shares of the issue born after my decease of any of my children taking in the division aforesaid. Provided however and it is my mind and will that during the minorities of any persons who under the aforesaid trusts may become entitled to a share of my residuary estate only the interest and income of such share shall be paid to such persons during their respective minorities. And provided fur-

ther that if said trustee shall deem it best so to do instead of paying the interest and income of my residuary estate unto my children and unto their issue as hereinbefore provided for, they may pay and apply the same to and for their proper support maintenance and education."

This paragraph applies only to "shares happening in the division of my residuary estate after the decease of my wife [not also after the decease of her daughters or their issue] unto grandchildren or remoter descendants of mine," that is, to issue of testator's children who predeceased him, as provided in the last clause of the 2d paragraph above quoted; and hence has no applicability here, since Virginia survived her father, and the share of herself and her descendants pass under the first clause of the 2d paragraph, which the 3d paragraph, above quoted, continues and finally ends so far as concerns the trust for the parties therein specified; just as the 4th paragraph continues and finally ends the trust specified in the last clause of the 2d paragraph. Appellee's contention at this point is that the words "after the decease of my wife," italicized above, refer to any period of time however remote, whereas they clearly refer to and have the same meaning as "from and immediately after the decease of my wife," specified in the 2d paragraph. This also the context compels; for, as pointed out above, paragraph 2 covers two cases, paragraph 3 continues and ends the trust set forth in the first thereof, and paragraph 4 continues and ends the trust set forth in the second thereof.

Admittedly the final paragraph of this article covers only the cases of those who, though otherwise entitled to take, die during minority, and to testator's children who die after his wife without leaving issue; and hence has no applicability here, since appellant and his brothers and sister are of full age, and Virginia, their ancestress, left issue. It is clear, therefore, the court below

erred in holding the trust continued as to appellant's share of the residuary estate of testator.

The only other question for consideration is whether the petition of review was not properly dismissed, in view of the fact that the foregoing claims might have been made at the audit of the accounts? This, though referred to, was not decided in the opinion below; and we are not required to answer it at length, since, upon this ground, the right to a review was not questioned in the pleadings, and hence should not be considered: Luther v. Luther, 216 Pa. 1. It may be well to point out, however, that section 48 of the Fiduciaries Act of 1917, P. L. 447, 514, under which this proceeding was had, provides that "Within five years after the final decree confirming the original or supplementary account of any fiduciary, which has been or may be hereafter passed upon, petition of review being presented by such fiduciary or his legal representatives, or by any person interested therein, alleging errors in such account, or in any adjudication of the orphans' court, or any report of an auditor of such account, which errors shall be specifically set forth in said petition of review, said petition and errors being verified by oath or affirmation, the orphans' court *shall* grant a rehearing of so much of said account, adjudication, or auditor's report as is alleged to be error in said petition of review, and give such relief as equity and justice may require, by reference to auditors, or otherwise, with like right of appeal to the proper appellate court as in other cases: Provided, that this act shall not extend to any cause when the balance found due shall have been actually paid and discharged by any fiduciary"; and that this is an advance on section 1 of the Act of October 13, 1840 (P. L. 1841, page 1), since it requires a review to be granted if any error is made by the adjudication, as it has been here. The Act of 1840 has no such provision, and the decisions quoted against the review arose under it.

Moreover in the present instance it is expressly admitted by agreement of the parties (a) that the balance shown by the adjudication is still held by accountant, (b) that two of petitioners, one of whom is appellant, were actually in military service at the time of the audit and adjudication, the third was preparing to enter military service, and the fourth was a minor, (c) that they were not "notified that any question was to be adjudicated......except the correctness of the account filed by the trustee, nor did they understand that any other question would be presented," and (d) that Mr. Janney, who later became their counsel in this matter, was then in France, and they did not learn of the action of the court, of which complaint is now made, until January 6, 1920, whereupon they promptly applied for this review. As we have construed testator's will, an error of law appears in the adjudication, and, under such circumstances, the act says the court "shall grant a rehearing" thus making the review a matter of right (Bailey's Est., 208 Pa. 594), unless distribution has been made. In the stress of war times, during 1917, when these accounts were filed, adjudicated and confirmed, appellant and his brothers were admittedly engaged or about to be engaged in the duty of helping their country in its time of need; and hence, under such circumstances, the court could, entirely aside from the act, have wisely exercised the inherent power which it possesses, and granted the review (Sloan's Est., 254 Pa. 346), since, under the admitted facts, no one could possibly have suffered by its so doing.

Of course, if the question at issue had been raised, contested and decided adversely, a petition of review could not be substituted for exceptions and an appeal; but it was not, and, under the Act of 1917, this would possibly be the only bar to the "shall grant a rehearing of so much of said......adjudication......as is alleged to be error in said petition of review," where, as here, admittedly

the estate has not been distributed and nobody can be injured by granting the relief sought.

The decree of the court below is reversed, the petition of review is reinstated and the prayer thereof is granted, and the record is remitted with a procedendo; the costs of this appeal to be paid by the estate of testator.