## Willing's Estate.

*Practice, C. P.—Orphans' court—Bill of review—Correction in payment of income—Acts of October 13, 1840, P. L. (1841) 1, and June 7, 1917, P. L. 447*

1. The Fiduciaries Act of June 7, 1917, P. L. 447, broadens the power conferred on the orphans' court, by the Act of October 13, 1840, P. L. (1841) 1, to grant a bill of review.

2. Under the Act of 1917, relief should be granted where justice and equity require, and no one suffers thereby, and no longer should be limited, as a matter of right, to cases where errors of law appear on the face of the record, or where new matters have arisen since the decree, and, as a matter of grace, upon subsequent discovery of new evidence as to facts upon which the decree was grounded, which could not have been procured by the use of due diligence.

3. Though the adjudication of an account becomes final and binds the parties as to what appears therein, unless later reviewed, still to have such effect it must properly call to the attention of the parties the specific matters to which they must object, if dissatisfied.

4. Where the income side of an account merely states that the income was paid to a certain date "to those entitled and accounts rendered," and the purpose of filing the incomplete account was to bring to the attention of the court a legal question, so that the rights of annuitants receiving the income could be defined, the adjudication of such account must be opened on a bill of review even after partial distribution, where an appellate court has subsequently passed upon the legal question involved in favor of the annuitants, and it appears that the estate was not exhausted and the trustee discharged, and that the annuitants promptly applied for a bill of review after their rights had been defined.

5. Irrespective of any legislation, the orphans' court possesses an inherent discretionary power to correct its own records in the interest of justice, even to protect parties from the effect of their own mistakes.

Mr. Chief Justice MOSCHZISKER dissented.

Argued December 1, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 255-256, by Rupert Featherstonhaugh and Robert E. Lee de Potestad, annuitants, from decree of O. C. Phila. Co., Jan. T. 1897, No. 264, dismissing petition for review in estate of Mathilda Lee Willing, deceased. Reversed.

Petition for bill of review. Before HENDERSON, J.
The opinion of the Supreme Court states the facts.
Petition dismissed. Rupert Featherstonhaugh and Robert E. Lee de Potestad, annuitants, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Hampton L. Carson* with him *Joseph Carson* and *Shirley Carter,* for appellants.—A party claimant cannot be in fault if, at the time of the alleged opportunity to be heard, his legal rights had not been determined: Dewy v. Des Moines, 173 U. S. 200. There was no laches on part of annuitants.

Laches must be based on a full knowledge of a legal right and a failure to act on it for an unreasonable length of time.

The claims of the annuitants (appellants) were pre‐ sented for the difference between the amount paid and the amount given under the will of decedent, as in‐ terpreted by the Superior Court in Willing's Estate, 84 Pa. Superior Ct. 546, 552.

Under the three cases of Grim's App., 109 Pa. 391; Grim's Est., 147 Pa. 190, and Reed's Est., 237 Pa. 125, we are not precluded from asking that inequalities in the distribution of funds of a continuing trust shall be rectified upon a further accounting.

A distributive income account is conclusive only as to the fund distributed: Kellerman's Est., 242 Pa. 3; Turn‐ bull's Est., 88 Pa. Superior Ct. 482.

*Maurice Bower Saul,* with him *R. M. Remick,* for the Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under will of Mathilda Lee Willing, appellee.—Appellants had their day in court and are not entitled to another: Millikin's App., 227 Pa. 502; Been's Est., 13 Pa. Dist. R. 695; Wetherill's Est., 8 W. N. C. 238; Scott's App., 112 Pa. 427; Mich‐ ener's Est., 225 Pa. 66.

*John Hampton Barnes,* for Violet Lee Willing Morris, Eleanor Willing Patterson and Francis D. Patterson.

OPINION BY MR. JUSTICE SADLER, January 3, 1927:

This appeal complains of the refusal of the orphans' court to grant a review of the second and partial account of the trustee named by the will and codicils of Mathilda Lee Willing. The decedent, a citizen of the United States, but temporarily residing in France at the time of making the disposition of her property, provided for the creation of two annuities of 10,000 francs each, with other provisions not necessary to consider here,

except as affecting the residuary legatees. When she died in 1896, the value of the money unit named was slightly less than twenty cents in American money, and on this basis the annual payments, amounting to $1,930, were made to those entitled, or their successors, until the filing of the first account, which was adjudicated on October 16, 1917, and the balance then found remaining was paid over to the trustee. Thereafter the rate of exchange for the paper franc fell, until it was reduced to less than five cents in 1923. In February of 1923 or 1924, the date being the subject of an immaterial dispute, counsel made demand upon the trustee for payment of the annual sums, calculated on the value of the gold franc.

A second partial account of both principal and income was filed March 26, 1924, it being stated in the petition asking for adjudication as follows: "The reason or purpose of the filing of the account is to determine the question on what basis the annuity to Robert E. Lee de Potestad and Rupert Featherstonhaugh [the annuitants] shall be paid." The part dealing with the income failed to set forth items of debit and credit covering transactions with those interested, merely stating, "Income, from 1923, September 28th, to which date it was paid to those entitled and accounts rendered." As declared by counsel for the trustee, during the course of a later hearing, there was nothing in the statement filed which raised the question of the necessity to make claim for additional payments if it should be determined the value of the gold franc was to be used in determining the right of the annuitants, and this is apparent, for the amounts of the annual payments made prior to 1923, and to whom, are not set forth. It may be here noticed that the receipts, given for sums paid the annuitants from 1918, did not indicate on their face they were in full satisfaction of amounts due, but only acknowledged the payment "of 10,000 francs at the current rate of exchange." The purpose of the proceeding was

evidently to have the court fix the true measure of value, which should be a controlling guide to the parties. The account did set forth the balances of both principal and income on hand.

It was determined by a divided court that the gold standard should be applied, to which conclusion the residuary legatees excepted. Their objections were overruled, and the balances awarded to the trustee "for further accounting." On August 21, 1924, a schedule of distribution was filed, awarding the balance of income, of which $1,930 was directed to be paid to each of the annuitants for the year 1923-4, and the remaining amount at the time on hand was divided between the two residuary legatees. Four days thereafter, the latter appealed, and caused the record to be removed to the Superior Court. An affirmance of the decree followed (Willing's Estate, 84 Pa. Superior Ct. 546), and the record was returned to the court below on March 11, 1925. The annuitants, having won their legal contention, made prompt demand for a third accounting, so that there should be payment of their claim for a further allowance based on the difference in the value of the gold franc and the sums actually received for the years 1918 to 1923.

A new partial account was filed, and at the audit such claim was made, and met opposition from the residuary legatees, the trustee standing in the position of a stakeholder. After hearing some testimony, it was suggested that a further supplemental statement be filed, which would set forth in detail the income items between 1917 and 1923, omitted from the second partial account, so that the question desired to be brought to the attention of the auditing judge could be more clearly presented. The court was of opinion that this was a matter which should be considered rather as an amendment to the earlier statement, and suggested that the proper procedure to secure this end was by application to reopen the second account. Following this intima-

tion, a petition of review was filed, setting forth that no statement had been made before as to payments during the years in question, and, as a result, no formal exception to credits asked for any particular year could have been offered, and that the account in question had been submitted solely for the purpose of obtaining a legal determination of the rights of the annuitants as to payment at the exchange value of the paper or gold franc. Later, the petition was dismissed on the ground of laches in not making the claim at the time of the second audit. From this action of the court the present appeal was taken.

It is urged that the failure to file objections to the second account, and, at that time, present the demand now asserted, cannot be considered an acquiescence in the general statement found therein, or that all rights based on the underpayment of annuities prior to 1923 had been waived. On the contrary, it is insisted that the account as filed was not in such detail as to show what was to be concluded by the audit then had, particularly in view of the fact that the avowed purpose was to have only the legal question determined. This makes necessary a consideration of the legislation providing for a re-examination of accounts because of mistakes. The Fiduciaries Act of 1917 (P. L. 447, sec. 48) made possible such proceeding, and is of right where errors in the statement appear, or "in any adjudication of the orphans' court" unless the fiduciary has been placed in an injurious position by payment in accordance with the decree later complained of. This broadens the power conferred by section 1 of the Act of 1840 (P. L. 1), as pointed out in Troutman's Est., 270 Pa. 310. In the present case, the amount awarded from income in the schedule of distribution of August 1924 has been paid to the residuary legatees, but it does not appear that additional sums are not on hand available for the satisfaction of the claims of the annuitants if sustainable. Their rights could not be successfully as-

serted until the legal question involved had been determined. By the decision of the Superior Court, unappealed from, it is apparent the annuitants received less than the sum to which they were entitled, if the rule there laid down had been applied, and, unless they have waived their claims, should be made whole.

We are not unmindful of the cases prior to the Fiduciaries Act, holding that a review is of right only where errors of law appear on the face of the record, or when new matters have arisen since the decree, and to be allowed as of grace upon subsequent discovery of new evidence as to the facts upon which the decree was grounded, which could not have been procured by the use of due diligence: Scott's App., 112 Pa. 427; Nixon's Est., 239 Pa. 270; Millikin's App. 227 Pa. 502; Michener's Est. 225 Pa. 66. But the power formerly existing has been extended, and relief should be granted where justice and equity require, and no one suffers thereby: Troutman's Est. supra; Turnbull's Est., 88 Pa. Superior Ct. 482. Irrespective of any legislation, the orphans' court possesses an inherent discretionary power "to correct its own records in the interest of justice, even to protect parties from the effect of their own mistakes and blunders": Sloan's Est., 254 Pa. 346, 350.

It is true no express request for payment of the arrearages due in the earlier years was made at the time of the second audit. The partial account was however not so framed as to call upon the annuitants to file exceptions to credits claimed for particular years, or it was at least so indefinite as to leave the matter doubtful, and we cannot say they were required to do more than was done under the circumstances appearing. Though the adjudication of an account becomes final and binds the parties as to what appears therein, unless later reviewed, yet to have such effect it must properly call to the attention of the parties the specific matters to which they must object, if dissatisfied. The sole object of the second incomplete account filed here was

to bring to the notice of the court a disputed legal question, so that the rights of the parties could be defined. As soon as the controversy was settled, demand was made for the sum to which the annuitants were entitled by the decision of the Superior Court, and which would have been paid in prior years except for the honestly mistaken view of the legal rights of the parties. It may be that the residuary legatees have at the moment secured more than was proper, but the estate has not been exhausted and the fiduciary discharged. In fairness, the rights of all should be readjusted, and this is legally permissible: Gillespie's Est., 273 Pa. 227; Kellerman's Est., 242 Pa. 3; Grim's Est., 147 Pa. 190. Such a course is contemplated by the Fiduciaries Act, as already pointed out, when a proper petition for review is presented, as it was here.

The decree of the court is reversed, the petition of review is reinstated and the prayer thereof granted; the record is remitted with a procedendo; the costs of this appeal to be paid by the estate of the testator.

DISSENTING OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1927:

The trustee filed its first account in 1917 and its second account in 1924; it is the latter that appellants ask to have opened and reviewed for the purpose of surcharging accountant with alleged deficiencies in amounts paid to them on annuities between 1917 and 1923.

The part devoted to income in this second account is itemized on both debit and credit sides from September 28, 1923, to date of its last entry, March 1924; it is headed thus: "Income—From 1923, September 28th, —to which date it [the income] was paid to those entitled, and accounts rendered." To my mind, this says in effect that all questions concerning income prior to the date mentioned were closed; an understanding in which appellants appear to have acquiesced. They were pres-

ent at the audit of the account in the court below and took no steps at that time to compel a more elaborate statement of income collected during the years between 1917 and September, 1923, but confined their claims to annuities payable in 1924, out of income collected after September 28, 1923; and having succeeded in their contentions as to the annuities payable in 1924, they now seek to have the income account for prior years opened, reviewed and restated, in order to recover the difference between the sums received by them from 1917 to 1923 and the amounts which they would have been entitled to under the law as declared in the decision on their 1924 claims. This they do notwithstanding the fact that the petition for distribution, filed by the trustee and not denied by any answer, particularly state: "The reason or purpose of the filing of the account is to determine the question on what basis the annuity to Robert E. Lee de Potestad and Rupert Featherstonhaugh shall be paid." "Shall be" questions what is to happen in the future; these words form part of a future-tense phrase and raise or suggest no question as to past payments. Had the idea been to question past payments, either the petitioner would have said that the account was filed to determine on what basis the past-due annuities "should have been paid," or the present appellants would have raised that point. There was a balance of income shown by the account, to which this petition applied, sufficient to pay the now-complaining annuitants, if they were entitled, a considerable portion of the sums at present claimed by them; but they made no such claim at the time of the adjudication of the account in the court below. In the words of the opinion filed by that tribunal, "The schedule of distribution directed by the adjudication shows a balance of income to be awarded, of $10,891.77, which, after paying the annuities due February 24th, 1924, left a balance of $7,031.77. The annuities due in earlier years had been paid in francs at the current rate of exchange, and the

surplus income constituted a fund out of which these annuitants could have claimed the full payment of earlier annuities. No demand therefor was made."

The account brought the whole trust estate before the court, and any informalities and omissions in the part devoted to income were apparent when the account was filed; therefore, if the present petitioners had objections of that character to make, they should have entered them at the hearing in the court below; but, instead of so doing, they treated the account as sufficiently stated to raise the only question they then desired adjudged, as to the amount of the annuities due them in 1924. The schedule of distribution showed considerable balance of income after charging off the annuities due in February, 1924; appellants knew what amounts had been paid to them between 1917 and 1923, and the time of the adjudication of this account was the proper time to present their claims for arrearages, if they had any to make. They chose, however, to confine their claims to the annuities due in 1924, and proceeded entirely on that basis. In an action at law one must include in his claim everything that properly belongs to it, or be forever barred from suing for parts omitted; he cannot sue for items named as due, and, after succeeding in his suit, bring another action for earlier items of the same sort (Jenkins v. Scranton, 205 Pa. 598, 601; Stradley v. Bath Cement Co., 228 Pa. 108, 118; Anhaltzer v. Benedum, 266 Pa. 113, 114); this rule should be applied to the present situation. Appellants, when they had their day in court, having failed to claim for the amounts now alleged to be due them on annuties for 1917 to 1923, although pressing their claim for amounts due in 1924, ought not to be permitted to return to the former and recover.

It is well said in Woodward's Estate, 2 Chester Co. R. 9, 16, that "Distributees have some rights......; there should come a time when their shares may be used by them unhampered by the anxiety of having to

repay it, when they may feel at liberty to spend it or to adapt their style of living and expenditure to their apparent means," citing Montgomery's Appeal, 92 Pa. 202, 206. In the latter case we said: "It would be a great hardship upon distributees, to whom an [accountant] has voluntarily made payments......if they may be called upon for repayment after the lapse of years; they may have spent it or increased their style of living in entire good faith and in ignorance of any overpayment.". The present appellants might have demanded the filing of an account at any time during the six years in which they accepted their annuities on the depreciated franc basis, and allowed, without protest, the moneys now claimed by them to be paid to others; by whom, probably, such moneys were long since spent or disposed of as income rightfully belonging to them. Appreciation of the hardships that persons to whom moneys thus mistakenly awarded would suffer after they on faith in the court's decree, had changed their mode of living to accord with such increased income, no doubt largely accounts for the strictness with which our Orphans' Courts have always looked upon petitions for review, and the court below may well have considered this in acting on the present petition. But, be that as it may, the court followed precedent and established practice in refusing to open the account and grant the review asked for in this case; and, to my mind, its action in that regard ought not to be disturbed. As the court below has well said, the petitioners "had their day in court and are not entitled to another."

Section 48 of the Fiduciaries Act of 1917, P. L. 447, so far as the facts of the present case are concerned, must be read as virtually re-enacting section 1 of the Act of 1840, P. L. (1841) 1, for here no error of fact or law is alleged in the adjudication sought to be opened and reviewed,—it is alleged only that the court below failed to grant a measure of relief admittedly not at any time theretofore asked of it; hence this case is not

within Troutman's Estate, 270 Pa. 310. The old rules apply here, and thereunder a review may be had as a matter of right only for error of law apparent on the face of the record or for new matter which has arisen since the decree; or it may be granted ex gratia for after-discovered evidence which could not have been procured by due diligence at the time the original adjudication was made: Riddle's Est., 19 Pa. 431, 433; LeMoyne's App., 104 Pa. 321, 323; Priestley's App., 127 Pa. 420, 432; Milliken's App., 227 Pa. 502; Dox's Est., 227 Pa. 606. According to the authorities cited, these are the only grounds upon which a review should be granted, and appellants' petition discloses none of them.

While the circumstances of each particular case should be considered in deciding as to the application of the general rule, subsisting in all legal tribunals, that a claim must be asserted in full when its possessor has his day in court, review of adjudicated matters being granted of right only under exceptional circumstances and rarely as a matter of grace, yet this is a rule of public policy to economize the time of the courts, which belongs in common to all litigants, and there is no court in the state where it is more important to adhere to this well established and most beneficial rule than the overcrowded Orphans' Court of Philadelphia County. I cannot join the majority in holding that the judges of that tribunal, by their unanimous refusal of the present petition, abused the power vested in them.

For the reasons stated I here enter my dissent.