## Schlegel's Estate.

Edwin M. Gilbert, for petition.

Charles W. Eaby, K. L. Shirk, Harris C. Arnold and John A. Coyle, contra.

APPEL, P. J., June 14, 1928.—The record in this case was made during the administration of the late Judge Smith. It is as follows:

Theobald Schlegel died Jan. 17, 1922, testate, and letters testamentary were granted to J. Raymond Aument, a son-in-law—the executor named in the will — Jan. 23, 1922. The tax appraisement was filed April 30, 1922. March 12, 1923, the executor was cited to file an inventory and account. May 19, 1923, the executor filed his account of the personalty, in which he charged himself with $3000, a debt due from himself, and $500, a debt due from one of the sons. Exceptions were filed June 16, 1923. An inventory was filed July 2, 1923, in which the above two items of indebtedness were scheduled. July 9, 1923, the widow filed her election to take under the will. Aug. 3, 1923, the widow's appraisement was filed. Nov. 8, 1923, the account was audited, and on Nov. 15, 1923, an adjudication was filed, in which all exceptions to the account were dismissed and the principal in the hands of the executor, to wit, $4803.56, was directed to be paid to the widow upon her giving bond for the use of the persons entitled in remainder. It does not appear that this bond was ever given. From this decree of adjudication no appeal was taken.

June 17, 1926, a petition to discharge the executor was presented and a rule to show cause, etc., was granted. On the same day, the executor was cited to file an account and a rule granted. June 19, 1926, answers were filed by the executor. July 24, 1926, replications were filed. Nov. 26, 1926, answers to the above rules were again filed, and Jan. 13, 1927, replications were again filed.

Jan. 20, 1927, a petition for an injunction to restrain the executor from selling the real estate was presented, to which an answer was filed Feb. 7, 1927, and replication Feb. 8, 1927.

Jan. 27, 1927, petition for review was filed by the executor, asking to be relieved of the above-mentioned two items of charge—his own debt of $3000 and the $500 debt of the son. A rule to show cause was granted by the court. April 28, 1927, the executor gave a bond to secure the proper application of the proceeds of the sale of the real estate, which was sold by the executor. June 16, 1927, another petition for review was filed by the executor, differing slightly from the former petition for review, raising solely the question of relief from the $3000 and the $500 items of charge. A rule to show cause, etc., was granted. June 21, 1927, an answer was filed by John Schlegel, one of the residuary legatees. Oct. 6, 1927, depositions were taken on the part of the executor and related to the above two items of charge. Oct. 13, 1927, the prayer for review was refused by the court. No appeal was taken from this decree, but on Oct. 28, 1927, the executor again presented a petition asking for a rehearing and a review—again asking for relief from the above-mentioned two items of charge. A rule to show cause, etc., was granted and is now pending.

April 21, 1928, the second account was filed, including the proceeds of the sale of the real estate. May 14 and May 18, 1928, exceptions to the account were filed—to be passed on when the account comes on for audit.

The petition for review filed Jan. 27, 1927, refused by Judge Smith Oct. 13, 1927, and the petition for a rehearing and review filed Oct. 28, 1927, and now pending, both relate to the same matters and raise the same questions. These are the items of $3000 and $500 debts due the estate by the executor and Martin Schlegel. They were both scheduled by the executor in the inventory, charged in the account and are included in the balance of $4803.56 found to be in the executor's hands directed to be paid to the widow upon her giving a bond. This adjudication is sealed by a definitive decree of the court, from which no appeal has been taken. Under the present rule to show cause, etc., the executor is again asking the court to be relieved from the two charges

which he has accounted for as paid. The answer might well be made that, in the face of a definitive decree not appealed from, all matters included therein (and these two items are so included) must be held to be determined. A petition for review may not take the place of an appeal: Sherwood's Estate, 206 Pa. 465. It may be conceded that under section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, the Orphans' Court has power to grant review under certain circumstances if there be error in the adjudication apparent on the record. It may also be granted that, irrespective of any legislation, it has an inherent power "to correct its own records in the interest of justice, even to protect parties from the effect of their own mistakes and blunders:" Sloan's Estate, 254 Pa. 346; Troutman's Estate, 270 Pa. 310; Willing's Estate, 288 Pa. 337. It is to this inherent power of the court to grant relief, when justice and equity require, and no one suffers thereby, that petitioner makes his appeal in this case. He is appealing to the discretion of a chancellor.

It is fundamental that he who asks equity must come into court with clean hands, and because this fiduciary does not have clean hands his petition must be denied. The record of his administration of the trust reposed in him on its face shows his unfaithfulness. The decedent died in 1922. Among the assets of the estate were his own indebtedness of $3000 and that of a son of $500. They were charged by him in his account and included in the balance of $4803.56 found in his hands by the decree of adjudication Nov. 15, 1923. He failed to obey the injunction of the court not to pay this over to the widow without taking a bond to protect the residuary legatees. He failed to pay or collect his own indebtedness and that of the son. He appears to have made payments to the widow out of the principal and now finds himself unable to hand over to the residuary legatees the money due them on final distribution. For nearly five years he concealed the fact that he had not paid his debt to the estate and had not collected the $500 due from the son. During all that time he never intimated they could not be collected. According to the well-understood doctrine of laches alone, he would now be entitled to no relief. During this time he admitted he collected a debt of $1500 due by him that was amply secured by mortgage on property owned by him, and failed or neglected to pay, collect or safeguard the unsecured debt of $3000, from which he now seeks to be relieved. During all this time the residuary legatees were led to believe it was or would be paid. They had a right to believe the *corpus* of the personal fund, to wit, $4803.56, was amply protected by the bond he was directed to take from the widow. Not until Jan. 27, 1927, when the first petition for review was presented, were they notified that these debts were not paid and could not be collected. If he thought they were uncollectible, it was his duty to resign promptly his executorship and permit an administrator to be appointed, who could take proper legal measures to collect them. He resisted an application for his discharge and delayed proceedings at every stage. He appears to have wasted and mismanaged the estate, utilizing it for his own benefit, and now, when he has not the personal fund in hand for the residuary legatees, alleges injustice has been done him and asks to be relieved of his own blunders and mismanagement. He created the situation in which he now unfortunately finds himself. He does not come with clean hands and is not entitled to the equitable relief of a chancellor to save him.

The rule to show cause, etc., is discharged and the petitioner is directed to pay the costs.

From George Ross Eshleman, Lancaster, Pa.