## Hendel's Estate

432

■

*E. S. Richardson* and *John A. Moss,* for petitioner.
*Matten & Matten,* contra.

MARX, P. J., January 10, 1942.—Petitioner seeks a review of an adjudication and an amendment of the decree of distribution based thereon.

Raymond H. Hendel died on April 21, 1931, testate. His will was probated and letters testamentary thereon were granted on April 27, 1931, to The Reading National Bank & Trust Company, executor. Testator placed his entire estate in trust, to the use of his wife for life, remainder to his five named children, and named The Reading National Bank & Trust Company trustee. The inventory filed showed a personal estate appraised at $67,507.97. A supplementary inventory added a one-half interest in the partnership of "John Hendel Sons", which was appraised at $30,198.62.

The Reading National Bank & Trust Company, executor and trustee, became insolvent. It discontinued operations pursuant to the Presidential decree of March 4, 1933, and never resumed. A first and final account of the executorship was stated and submitted for audit by Harvey S. Adams, receiver, by appointment of the Comptroller of the Currency of the United States. In that account were charged, inter alia, the assets included in the aforesaid general and supplementary inventories. Exceptions to the account were filed and prosecuted in behalf of the widow, life beneficiary under the trust. An adjudication was filed and confirmed nisi on September 10, 1938.

In that adjudication the executor was found negligent in failing to accept an offer of $35,000 for the

estate's interest in the partnership in August 1931, and liable for the loss sustained thereby, as of March 4, 1933, when the executor's fiduciary powers were suspended. A surcharge in the sum of $35,000 was decreed and distributed to the Berks County Trust Company, succeeding trustee under the will of decedent. There was also distributed and decreed to the succeeding trustee "the partnership interest to be held in abatement of said surcharge at a value to be determined as of March 4, 1933".

There was likewise decreed and distributed a surcharge of $1,115.48, "together with 6—$1,000 Cerena Apartment Bldg. 1st Mtge. 6% Gold Bonds, $564.52" and interest accrued, but not paid, on said bonds, $36. The $36 item was subsequently changed to $85.58.

After exceptions to the adjudication and distribution, the court, in an opinion filed March 25, 1939, affirmed the findings involved in the aforesaid decrees, and considered the legal propositions in relation thereto, submitted by exceptants. One such proposition was:

" 'Should the court have adjudicated as a claim against the receiver the full amount of the surcharges and distributed the trust assets, except the Reading National Bank & Trust Company stock to the succeeding trustee, provided that dividends on the claim against the receiver plus the proceeds of the eventual liquidation of the assets should not exceed the amount of the claim?' "

In answer we said:

"In this case the liability of the executor was determined, and specific assets, pertinent to that liability, were found. We directed the application of those assets to the liability and found a net sum to be claimed against the estate of the insolvent bank. The last of those steps should have been omitted.

"It is the function of this court to audit the executor's account and to adjudicate rights and liabilities. Distribution of the assets of the bank now in process

of liquidation by the receiver, and the determination of rights of claimants against those assets is not required or permitted, on this accounting. We have found the executor liable in the sum of $35,000 on the item of the testator's partnership interest and have decreed that interest and its value as of March 3, 1933, to the trustee. We found the executor liable on the Cerena Apartment Building bonds in the sum of $1,680 and have distributed the bonds now held, at a value of $564.52, to the trustee. The specific assets so distributed were under equitable liens in favor of the estate, and their effect upon distribution of the assets of the bank, on an accounting thereof by the receiver, must be determined in the court having jurisdiction of that account. The adjudication is now amended in accordance with the views here expressed."

There was no appeal from this final decree.

On October 11, 1940, the Berks County Trust Company, succeeding trustee, sought a decree requiring Herbert F. Dunn, then and now receiver of Reading National Bank & Trust Company:

"1. To turn over to your petitioner the assets adjudicated to it by the decree of your honorable court dated September 10, 1938, as amended March 25, 1939.

"2. To recognize the claim of your petitioner against The Reading National Bank & Trust Company, in the hands of the respondent as receiver, on the surcharge adjudicated by said decrees as set forth in this petition in the sum of $36,765.59.

"3. To turn over to your petitioner the balance of cash arising out of dividends due your petitioner after payment of the amounts awarded in the adjudication of your honorable court dated September 10, 1938."

In his answer, the receiver denied, inter alia, a claim against the assets in his hands in the sum of $36,765.59, and contended the net surcharge "on account of the undivided interest in the partnership of John Hendel Sons is $35,000, minus the valuation of the partnership interest as of March 4, 1933."

In an opinion filed December 14, 1940, the court, by way of interpretation, said:

"The adjudication of September 10, 1938, found and returned a liability on the accountant, as of August 1931, on the partnership interest, of $35,000. Prior thereto we found no negligence in administration. There was no. final liquidation of the partnership interest and it remained intact on March 4, 1933, the beginning of the 'banking holiday', after which the accountant possessed no fiduciary powers. The loss to the estate, on that day, after which further losses could not be charged to the accountant, was the value found, $35,000, less the value of the partnership interest. The right to enforce partnership liquidation had been with the accountant and that right, at its value as of March 4, 1933, was decreed and distributed to the succeeding trustee, in abatement of the $35,000 liability. Negligence in administration and further loss in value of the interest, after March 4, 1933, was not chargeable to the accountant. The right to enforce partnership liquidation now rests in the succeeding trustee. The liability of the accountants, as of March 4, 1933, on the partnership interest, was $35,000. Under the jurisdiction of this court there was that unliquidated interest. Upon this the estate had an equitable lien, enforceable here against the asset, to the abatement of the adjudicated liability. That was the only asset, under the authority of this court, available to be applied against the surcharge, and we directed that it be so applied. Further recovery must be sought against the general assets of the accountant. Over those this court has no jurisdiction. The application of this decree against those assets lies within the authority of the person or tribunal having jurisdiction of those general assets and the accounting thereof. The rule to be applied must be invoked there. Our authority has ended."

Averring error, petitioner now seeks a review of the adjudication and a reformation of the decree.

Petitioner's right to review is doubtful. The question now raised was litigated and determined on exceptions to the adjudication. After final decree petitioner had a right of further exception or appeal. He resorted to neither. It is well settled that a petition for review shall not be accepted as a substitute for exceptions or an appeal: Troutman's Estate, 270 Pa. 310; Reamer's Estate, 331 Pa. 117, 120; Turnbull's Estate, 88 Pa. Superior Ct. 482, 490. In view of the consent of respondent that further consideration be given and the assumption that no distribution already made will be affected adversely by any amendment or modification of the decree already made, it would seem more logical to consider this a petition for and consent to reargument.

In the concluding paragraph of his answer, respondent states the precise question raised to be "whether or not the total surcharge of $36,765.59 should be reduced by the value of the partnership asset as of March 4, 1933, agreed to be $16,215.90 and, in addition, by the value of the Cerena Apartment Bldg. First Mortgage 6% Gold Bonds determined by your honorable court in its first adjudication to be of the value of $564.52."

Petitioner asks payment out of the general assets of the defunct bank on the basis of the surcharge of $36,-765.59, limiting actual payments to the aggregate of $19,985.16, the surcharge less the accepted value of the specific assets decreed.

Respondent asks that the basis of the dividends out of those general assets be determined to be $19,985.16, being the surcharge less the specific assets distributed to petitioner as of March 4, 1933.

Shall the basis for dividends be $36,765.59 or $19,-985.16, is the main question proposed.

This court has complete and unquestioned jurisdiction over the estate of decedent, the executor of the will, and the administration by the executor. It has power to determine improper administration, ascertain losses,

if any, and place liability for them. It has no jurisdiction over the accountant as liquidator of the affairs of The Reading National Bank & Trust Company. That jurisdiction is vested in the Federal courts, and Federal laws govern his administration of those affairs: Pestcoe v. Sixth National Bank of Philadelphia et al., 112 Pa. Superior Ct. 373, 382; Hober's Estate, 118 Pa. Superior Ct. 209; Kerr's Estate, 41 D. & C. 209.

In the exercise of its statutory power this court found that an undivided one-half interest in an unliquidated partnership lay in the hands of the executor for administration. With the assets went the right to sell the interest or to require liquidation of the partnership and division of partnership assets. The accountant was found negligent in failing to accept an offer to purchase at $35,000. The value of the asset had fallen and, on March 4, 1933, when the accountant lost its fiduciary powers, the value, as agreed by the parties in interest, stood at $16,215.90. Liability for loss, as to the accountant, was limited to that day, and there was no liability for any further loss. Under the decree entered, the abatement of the surcharge was fixed at $16,215.90, and the net surcharge on that item became $18,784.10. The surcharge on the Cerena Apartment Building bonds was $1,115.48 and interest $85.58, in addition to the bonds valued and distributed at $564.52. The total surcharge, after abatement, therefore, became $19,985.16.

The decreed surcharge of $35,000 was subjected to abatement by the value of the partnership interest on March 4, 1933, when the executor's right of administration ended and there remained to the executor only the right and liability to transfer to a succeeding fiduciary. The partnership interest was decreed in abatement of, not as collateral to, the decreed surcharge. The situation required that the liability of the accountant be clearly fixed as of the date of the termination of fiduciary powers, as it was by a defined abatement or reduction, and not be left to variance, question, or involvement as

a result of the administration of collateral by a succeeding fiduciary. The decree made appropriated the partnership interest to the surcharge and left the accountant without right to claim the benefit of a subsequent increase or liability for a subsequent decrease in value or on liquidation. The equitable lien of the estate on the specific assets in the hands of the accountant was liquidated by the decree of the assets in abatement. We, accordingly, find and decree specifically that petitioner's net surcharge, the basis of the claim against the receiver of the Reading National Bank & Trust Company, is $19,985.16. The petition for review is dismissed and the said decree is entered on reargument.